*In the Matter of the Honorable Amy Leigh Nickerson, Judge of the Orphans' Court of Maryland for Kent County, Second Judicial District*, JD No. 1, September Term, 2020, Opinion by Booth, J.

**JUDICIAL DISCIPLINE — SANCTIONS — REMOVAL**

Judge Amy Leigh Nickerson violated Maryland Rules 18-101.1 (Compliance with the Law); 18-101.2 (Promoting Confidence in the Judiciary); 18-101.3 (Avoiding Lending the Prestige of Judicial Office); 18-102.16 (Cooperation with Disciplinary Authorities); and 18-103.1 (Extra-Official Activities in General). These violations arose after Judge Nickerson was charged with and convicted of impaired driving and other related offenses; sought to use her judicial office and personal connections to influence an officer's decision to charge her with impaired driving and other related offenses; failed to cooperate with an officer during a traffic stop; failed to cooperate with disciplinary authorities; and failed to comply with the terms of a Conditional Diversion Agreement and private reprimand. Removal is the appropriate sanction in this case.

Maryland Commission on Judicial Disabilities
Case Nos.: CJD 2018-033 & CJD 2019-013
No argument/considered on the papers

IN THE COURT OF APPEALS

OF MARYLAND

JD No. 1

September Term, 2020

IN THE MATTER OF THE HONORABLE
AMY LEIGH NICKERSON,
JUDGE OF THE ORPHANS' COURT
OF MARYLAND FOR KENT COUNTY,
SECOND JUDICIAL CIRCUIT

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

Opinion by Booth, J.

Filed: May 27, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

In Maryland, judges are expected to abide by certain ethical standards, set forth in the Maryland Code of Judicial Conduct ("MCJC"),[1] to ensure they conduct themselves in a manner consistent with preserving the integrity of the judiciary. When a judge's conduct appears to fall short of these ethical standards, the Maryland Constitution vests the Maryland Commission on Judicial Disabilities (the "Commission") with the authority to investigate alleged instances of judicial misconduct and, where appropriate, recommend that this Court take appropriate disciplinary action, up to and including removal from office. Md. Const. art. IV, § 4B.

This case concerns Amy Leigh Nickerson, a judge of the Orphans' Court for Kent County, who was elected to that position by the qualified voters of Kent County in November 2014 and reelected in November 2018.[2] On October 18, 2018, at the directive

---

[1] The Maryland Code of Judicial Conduct ("MCJC") is codified in Maryland Rules 18-100, *et seq.* The substantive provisions and much of the structure of the rules is based in large part on the 2007 Model Code of Judicial Conduct proposed by the American Bar Association ("ABA Model Code"). *See* Md. Rule 18-100.1(a). The Maryland Rules are numbered to correspond to the parallel ABA Model Code Rules. Thus, for example, ABA Rule 1.1 (Compliance with the Law) is Maryland Rule 18-101.1, which is also captioned "Compliance with the Law." *See id.*, Committee note. The provisions of the MCJC generally apply to incumbent judges of the orphans' court, unless a specific rule provides to the contrary. *See* Md. Rule 18-100.2(b).

[2] The Maryland Constitution provides for the election of three judges of the orphans' court by the qualified voters of the respective county. Md. Const. art. IV, § 40. In order to be qualified for the position of Judge of the Orphans' Court for Kent County, the individual must be a citizen of the State and resident of the county for the twelve months preceding the election. *Id.* The term of office is four years. By statute, orphans' court judges are charged with various duties involving the administration of estates, including conducting judicial probate, directing the conduct of personal representatives, passing orders necessary for administering estates, and securing the rights of minors whose estate is being administered by a guardian. *See* Md. Code, Estates and Trusts Article ("ET") §§ 2-102, 13-106.

of the Commission, Investigative Counsel[3] filed charges against Judge Nickerson, pursuant to Maryland Rule 18-431(a). The charges originated from allegations of sanctionable conduct arising from a March 2018 traffic stop of Judge Nickerson that resulted in her arrest. Additionally, in February 2019, the Commission directed Investigative Counsel to investigate an outstanding tax lien and judgment that had been entered in 2013 against Judge Nickerson in favor of the Maryland Comptroller. The charges arising from the traffic stop were initially addressed through the entry of a Conditional Diversion Agreement ("CDA") pursuant to Maryland Rule 18-426. The investigation into the outstanding tax lien was addressed by a reprimand pursuant to Maryland Rule 18-427. Judge Nickerson consented to the disposition of the investigations through the entry of the CDA and reprimand, both of which were contingent upon Judge Nickerson complying with certain terms and conditions. After Judge Nickerson failed to satisfy the conditions, the Commission revoked the CDA, proceeded with formal charges, and scheduled a hearing. After the hearing, the Commission found that Judge Nickerson's conduct violated several provisions of the MCJC, and it unanimously recommended that this Court issue an order removing Judge Nickerson from office. We agreed with the Commission's recommendation and entered an order on March 26, 2021, which removed Judge Nickerson

---

[3] The Maryland Constitution vests this Court with rule-making authority to establish the "means to implement and enforce the powers of the Commission," as well as "the practice and procedure before the Commission." *See* Md. Const. art. IV § 4B(a)(5). Pursuant to that authority, this Court has established the position of Investigative Counsel. *See* Md. Rule 18-411(e). This Rule provides for the appointment by the Commission of an individual with substantial trial experience and familiarity with the MCJC, subject to approval by this Court. *Id.*

from the office of Judge of the Orphans' Court for Kent County. We explain in this opinion the reasons for that action.

# I

## Procedural History

As noted above, this proceeding is the culmination of two separate disciplinary investigations into Judge Nickerson for sanctionable conduct[4] under the MCJC.

### A. The 2018 Charges

In March 2018, the Commission initiated an investigation, through Investigative Counsel, concerning Judge Nickerson's extrajudicial conduct after she was charged with, among other things, impaired driving, speeding, and reckless driving. Following an investigation, the Commission determined there was probable cause to believe Judge Nickerson engaged in sanctionable conduct and directed Investigative Counsel to file charges against Judge Nickerson. Consistent with this directive, Investigative Counsel filed charges with the Commission on October 25, 2018, alleging that Judge Nickerson violated the MCJC. Specifically, Investigative Counsel alleged that Judge Nickerson violated Maryland Rules 18-101.1 (Compliance with the Law); 18-101.2 (Promoting

---

[4] "Sanctionable conduct" means:

> misconduct while in office, the persistent failure by a judge to perform the duties of the judge's office, or conduct prejudicial to the proper administration of justice. A judge's violation of any of the provisions of the Maryland Code of Judicial Conduct promulgated by Title 18, Chapter 100 may constitute sanctionable conduct.

Md. Rule 18-402(m)(1).

3

Confidence in the Judiciary); 18-101.3 (Avoiding Lending the Prestige of Judicial Office); and 18-103.1 (Extra-Official Activities in General).

After Judge Nickerson filed a response in which she admitted that she violated each rule for which she was charged and requested a reprimand, Judge Nickerson and the Commission entered into a CDA in November 2019.[5]  Thereafter, Judge Nickerson failed to comply with the material terms of the CDA, which resulted in the Commission revoking

---

[5] The Commission's authority to enter a conditional diversion agreement ("CDA") is set forth in Maryland Rule 18-426, which provides:

> **(a) When Appropriate.**  The Commission and the judge may enter into a conditional diversion agreement if, after an investigation by Investigative Counsel:
>
> (1) the Commission concludes (A) that any alleged sanctionable conduct was not so serious, offensive, or repeated as to justify the filing of charges or, if charges already had been filed, the imposition of any immediate discipline, and (B) that the appropriate disposition is for the judge to undergo specific treatment, participate in one or more specified educational or therapeutic programs, issue an apology to the complainant, or take other specific corrective or remedial action; and
>
> (2) the judge, in the agreement, (A) agrees to the specified conditions, (B) waives the right to a hearing before the Commission and subsequent proceedings before the Court of Appeals, (C) agrees that the conditional diversion agreement may be revoked for noncompliance . . ., and (D) agrees that the agreement may be admitted in any subsequent disciplinary proceeding against the judge to the extent that it is relevant to the allegations at issue or the sanction that may be imposed.

Although a CDA constitutes neither a form of discipline nor a finding that sanctionable conduct was committed, the Commission is authorized to revoke a CDA and proceed with disciplinary proceedings where a judge fails to satisfy a material condition of a CDA, as a disciplinary complaint remains open until all conditions of a CDA are satisfied.  Md. Rule 18-426(b), (c), and (e).

it in April 2020, and instructing Investigative Counsel to proceed with the original charges, as well as an additional charge for violating Maryland Rule 18-102.16(a) (Cooperation with Disciplinary Authorities) (the "2018 Charges").

**B.    *The 2019 Charge***

In February 2019, Investigative Counsel initiated an investigation into an outstanding Maryland tax lien and judgment entered against Judge Nickerson for unpaid taxes for the calendar year 2013. Following the investigation, the Commission determined that the unpaid tax lien violated Maryland Rules 18.101.1 (Compliance with the Law) and 18.101.2 (Promoting Confidence in the Judiciary) and decided to issue a reprimand, which Judge Nickerson did not oppose, subject to the condition that she submit proof that she had filed "federal and state tax returns for tax years 2013 through 2018, including proof of payment of any tax obligations owed, including applicable penalties and interest." Judge Nickerson agreed to the terms of the reprimand, which was issued in November 2019. The reprimand stated that Judge Nickerson would provide proof of the tax filings and payment of any tax obligations within six months of the date of the reprimand. The reprimand also stated that Judge Nickerson's "[f]ailure to satisfy this condition could result in an investigation by Investigative Counsel and the filing of Charges."

Judge Nickerson did not submit the required documentation confirming her tax filings and payments as required by the reprimand. In July 2020, Investigative Counsel sent two letters to Judge Nickerson reminding her of the conditions. Despite the follow up correspondence, Judge Nickerson failed to submit the required information. Upon direction of the Commission, Investigative Counsel filed charges on August 5, 2020,

5

alleging that Judge Nickerson's failure to comply with the terms of the reprimand constituted a violation of Maryland Rule 18-102.16 (Cooperation with Disciplinary Authorities) (the "2019 Charge").

### C.     The Commission Proceedings on the 2018 Charges and the 2019 Charge

The Commission held a hearing on December 8, 2020 concerning the 2018 Charges and the 2019 Charge.[6] Prior to the hearing, pursuant to Maryland Rules 2-424 and 18-433(a), Investigative Counsel propounded multiple requests for admission of facts and genuineness of documents. Judge Nickerson failed to respond to these requests. Accordingly, the substance of the requests was deemed admitted pursuant to Maryland Rule 2-424(b) and entered as substantive evidence at the hearing. At the hearing, Investigative Counsel admitted 76 exhibits into evidence, including the audiovisual recording of the March 2018 traffic stop. Judge Nickerson was advised of her right to counsel but elected to proceed *pro se*. She declined to make any opening or closing remarks, and only participated in the proceeding to answer a handful of Commission questions.[7]

The Commission issued a written decision on January 29, 2021 setting forth findings of fact, conclusions of law, and a recommended sanction. With respect to the 2018 Charges, the Commission found by clear and convincing evidence that Judge Nickerson violated Maryland Rules 18-101.1, 18-101.2, 18-101.3, 18-103.1, and 18-102.16(a). With

---

[6] The proceedings were held virtually via Zoom due to health restrictions related to the COVID-19 global pandemic.

[7] Consistent with an order of the Commission entered prior to the hearing, Judge Nickerson was not permitted to present evidence as a result of her failure to respond to discovery requests propounded by Investigative Counsel.

respect to the 2019 Charge, the Commission found by clear and convincing evidence that Judge Nickerson violated Maryland Rule 18-102.16(a).[8] The Commission further found that Judge Nickerson's conduct met the definition of "sanctionable conduct" under Maryland Rule 18-402(m)(1). By unanimous vote, the Commission recommended her immediate removal as an Orphans' Court Judge for Kent County.

In accordance with Maryland Rule 18-435, the Commission referred the matter, including its recommendation, to this Court for final disposition. Because Judge Nickerson did not file exceptions to the Commission's findings, conclusions, or recommendation and failed to show cause, in writing, why oral argument should be held, we considered the matter on the papers. *See* Md. Rule 18-437(e) ("If no exceptions are timely filed or if the judge files with the Court a written waiver of the judge's right to a hearing, the Court may decide the matter without a hearing."). On March 26, 2021, we issued an order removing Judge Nickerson from the office of Judge of the Orphans' Court for Kent County, Maryland.

## II

### The Commission's Findings of Fact

As previously noted, Judge Nickerson did not file any exceptions to the Commission's findings of fact or conclusions of law. In reviewing the Commission's

---

[8] The Commission also found that Judge Nickerson's failure to cooperate with the Commission in connection with the tax lien investigation constituted a violation of Maryland Rule 18-101.1 (Compliance with the Law). However, in reviewing the formal charges filed in connection with the tax lien investigation, we determined that the Commission did not charge Judge Nickerson with a violation of this Rule. Accordingly, we have not considered the Commission's conclusion concerning this rule violation in connection with the tax lien.

findings of facts, we accept the Commission's findings as *prima facie* correct, and will only disturb the Commission's factual findings to the extent that they are clearly erroneous. *In re Russell*, 464 Md. 390, 413 (2019). Having independently reviewed the record, we conclude that the Commission's factual findings are well supported by the record and, therefore, not clearly erroneous.

### A.     *Findings of Fact Related to the Traffic Stop*

On March 9, 2018, Sergeant Harry A. Kettner of the Kent County Sheriff's Office stopped Judge Nickerson on Route 320 in Rock Hall, Maryland after determining, based upon his in-camera radar unit, that she was speeding. As Sergeant Kettner approached Judge Nickerson's vehicle, she stated that she had just left work.[9] Sergeant Kettner observed that her eyes were glassy and bloodshot, and her actions were slow and delayed. Sergeant Kettner also smelled alcohol emanating from Judge Nickerson's vehicle and observed a clear cup with clear liquid in the center console.

Sergeant Kettner then asked Judge Nickerson to exit her vehicle. After completing a phone call, and upon a second request from the officer, she complied. Judge Nickerson said to Sergeant Kettner, "[c]an I tell you something else? I'm a judge of the Orphans' Court. So please. I'm serious." Judge Nickerson also advised Sergeant Kettner that she had telephoned an individual who she referred to as "Kirby," and had told Kirby[10] that she had been pulled over by Sergeant Kettner.

---

[9] In addition to her position as an orphans' court judge, Judge Nickerson also worked as a hostess at a local restaurant. Judge Nickerson was returning home from a shift at the restaurant when she was pulled over by Sergeant Kettner.

Sergeant Kettner asked Judge Nickerson to rate her level of intoxication on a scale of one to ten, with ten being the highest. Judge Nickerson stated that she was a "five" and told Sergeant Kettner that she had a couple drinks before leaving work. At different points during the traffic stop, Judge Nickerson stated that she consumed three drinks and, in a conversation on the telephone with an unknown individual, she stated that she had consumed four drinks since 7:30 or 8:00 p.m. When Sergeant Kettner asked Judge Nickerson what was in the cup in the center console, she stated that it was club soda. Later in the stop, she admitted that the cup contained vodka. A subsequent test performed on the contents of the cup confirmed that it contained alcohol.

Sergeant Kettner administered multiple field sobriety tests to Judge Nickerson. After performing poorly on each, for the first time, Judge Nickerson raised a medical condition that she claimed to be the reason for her poor performance. Sergeant Kettner permitted Judge Nickerson to take measures to alleviate the effects of the medical condition, including drinking a beverage that was in her vehicle and contacting a family member to bring her another beverage. During this period, Judge Nickerson cited several different benchmarks for the alleviation of the effect of her condition, at which she felt that she would be able to complete the tests.

Before completing the field sobriety tests, Judge Nickerson told Sergeant Kettner that she lived a short distance away and asked if he would permit her to continue driving home while the officer followed her. After Sergeant Kettner advised Judge Nickerson that

---

[10] The individual whom Judge Nickerson referred to as "Kirby" was Lieutenant Kirby, one of Sergeant Kettner's supervisors.

9

this was not a possible outcome, she mentioned for a second time that she was a judge, to which Sergeant Kettner replied, "[o]kay . . . shouldn't you know better then?"

Once her symptoms were abated to what Judge Nickerson described as an appropriate level, Sergeant Kettner asked her to step out of her vehicle and perform the field sobriety tests again. After Judge Nickerson exhibited poor results on the tests, Sergeant Kettner placed her under arrest. During the transport, Judge Nickerson stated: "I'm serious, I'll show you where I live" and asked to retake the field sobriety test. Sergeant Kettner explained to Judge Nickerson that she was already placed under arrest. Judge Nickerson replied "[t]his is going to ruin my whole life" and that she was "losing my whole f---ing life." Judge Nickerson then mentioned her upcoming election and asked Sergeant Kettner for advice, stating that she had "a lot hinging on . . . ."

Thereafter, a lengthy exchange ensued between Sergeant Kettner and Judge Nickerson, during which Sergeant Kettner attempted to ascertain whether Judge Nickerson would agree to submit to a blood alcohol concentration test in Centreville. Sergeant Kettner asked Judge Nickerson thirteen times whether she would agree to take the test. In each instance, she refused to answer the question. Instead of answering the officer's question, she deflected by asking Sergeant Kettner several times for advice on what "he would do" if he were in her situation, "given her upcoming election." In each instance, Sergeant Kettner demurred. During one such exchange, Judge Nickerson responded to Sergeant Kettner's question by asking to call "Lieutenant Kirby." Sergeant Kettner told Judge Nickerson that she could not call Lieutenant Kirby and reminded her that their conversation was being recorded. Judge Nickerson asked if she could call her lawyer and

10

brought up Lieutenant Kirby again. After Judge Nickerson called someone who did not answer the phone, Sergeant Kettner told her she could call someone else, at which time Judge Nickerson once again asked Sergeant Kettner what she should do and repeated that her life was gone. Sergeant Kettner once again invited her to call someone else and read to Judge Nickerson the law regarding the breathalyzer test. Judge Nickerson called another unidentified individual and spoke to that person. The Commission found that Judge Nickerson sought to attenuate the traffic stop by asking Sergeant Kettner to repeat the various consequences for specific blood alcohol concentrations.

The Commission found that Judge Nickerson created further delay in responding to the officer's multiple requests for her answer to the question of whether she would agree to a blood alcohol concentration test by calling another individual. Sergeant Kettner spoke with this individual, discussed Judge Nickerson's blood sugar and whether the officer would need to drive her home. During this call, on two occasions, Sergeant Kettner advised the individual that Judge Nickerson needed to decide whether she was going to take the blood alcohol concentration test, explaining that, with the passage of time, her failure to make a decision would be considered a refusal.

After the call ended, Judge Nickerson asked for Sergeant Kettner's opinion "off the record." Sergeant Kettner responded that he could not have an "off the record" conversation with her about this matter, to which Judge Nickerson responded, "[i]sn't that some s--t." Judge Nickerson continued, stating that "if I lose my job with the courts, I'll lose my health insurance." She again referenced her upcoming election and possibly having to withdraw.

11

Sergeant Kettner asked Judge Nickerson two more times whether she planned to submit to the blood alcohol concentration test and did not receive a response from Judge Nickerson other than "I don't know." Sergeant Kettner ultimately advised Judge Nickerson that, as the result of the passage of time, he would have to mark her as a "refusal[,]" to which Judge Nickerson responded, "[o]kay."

Sergeant Kettner charged Judge Nickerson with: two counts of exceeding the maximum speed; driving a vehicle while under the influence of alcohol; driving a vehicle while impaired by alcohol; negligent driving; reckless driving; and throwing, dumping, discharge, deposit of refuse on a highway. At a trial on the merits in the District Court sitting in Kent County, the court found Judge Nickerson guilty and entered a probation before judgment on all charges, with the exception of driving under the influence of alcohol, for which Judge Nickerson was acquitted.

Based upon the foregoing facts, the Commission found that Judge Nickerson was dishonest throughout the traffic stop. Specifically, the Commission noted Judge Nickerson exhibited a lack of candor when she initially claimed she had only consumed a "couple" drinks and later admitted that she had consumed three or four drinks. The Commission also determined that Judge Nickerson was not truthful when she initially told the police officer that the cup in her console only contained club soda, but later admitted that it contained vodka. We agree with the Commission's findings concerning Judge Nickerson's dishonest statements during the traffic stop.

In addition to her dishonesty, the Commission noted that Judge Nickerson sought to influence Sergeant Kettner's decision to conduct an investigation or dissuade him from

12

filing charges by interjecting her position as a judge as soon as she was stopped by the officer, and then two additional times during the stop, and by invoking the name of Sergeant Kettner's superior officer. We agree with these findings. The Commission also found Judge Nickerson refused to take responsibility for her conduct. At the Commission hearing, rather than admitting that she invoked her status as an orphans' court judge in an attempt to improperly influence Sergeant Kettner, Judge Nickerson told the Commission that she was merely identifying herself as being an orphans' court judge during the course of the traffic stop "in case he had seen me around or in the courthouse, because, you know, he could have run into me in the hallway or seen me, or recognized me and thought that I was there for District Court." We are wholly unpersuaded by Judge Nickerson's explanation and agree with the Commission's findings.

The Commission further found Judge Nickerson was uncooperative throughout the traffic stop. According to the Commission, Judge Nickerson was not only difficult throughout the field sobriety tests but also refused to respond to Sergeant Kettner's questions concerning her amenability to taking a blood alcohol concentration test. With respect to the latter conduct, the Commission concluded her lack of cooperation was "an effort to intentionally delay the blood alcohol testing and obfuscate the level of her intoxication." Based upon our independent review of the record, we agree.

**B.** ***Findings of Fact Related to the Failure to Comply with the CDA Conditions***

As previously discussed, in October 2018, Investigative Counsel filed charges against Judge Nickerson for her conduct leading up to, and during, the March 2018 traffic

13

stop. After Judge Nickerson admitted that she violated the MCJC for all the reasons set forth in Investigative Counsel's charges, the Commission and Judge Nickerson entered into a CDA in November 2019. Pursuant to the terms of the CDA, the Commission agreed to forgo further disciplinary action, provided Judge Nickerson completed the agreed upon corrective and remedial actions. Specifically, Judge Nickerson agreed to: (1) provide Investigative Counsel with documentation showing she successfully completed the terms of her court-ordered probation on or before January 20, 2020; (2) submit four quarterly reports to Investigative Counsel, the first of which was due February 20, 2020, verifying compliance with, and active participation in, all recommendations for the treatment and management of her health condition; (3) report to Investigative Counsel all non-orphans' court-related contact, interaction, or communication with on-duty law enforcement; and (4) attend and complete a Commission-approved ethics course. To assist Judge Nickerson in complying with the terms of the CDA, Investigative Counsel sent Judge Nickerson a letter on December 9, 2019 advising her of the agreed-upon submission deadlines.

Compliance with Investigative Counsel's letter proved to be a Sisyphean task. Indeed, Judge Nickerson failed to provide documentation verifying that she successfully completed probation to Investigative Counsel by the January 20, 2020 deadline. Notwithstanding Judge Nickerson's non-compliance with the initial deadline, Investigative Counsel extended the submission deadline to January 31, 2020. But again, Judge Nickerson failed to timely submit the required documents. In light of Judge Nickerson's failure to meet the original and modified deadlines, Investigative Counsel sent Judge Nickerson a letter, dated February 4, 2020, asking her to explain why she failed to submit

14

the required paperwork. On February 27, 2020, Judge Nickerson submitted documentation verifying her successful completion of probation.

Just as Judge Nickerson failed to timely submit documentation verifying that she successfully completed probation, she also failed to timely submit the required medical verifications by the February 20, 2020 deadline. After Investigative Counsel provided notice of this failure by letter dated February 21, 2020, Judge Nickerson provided some incomplete documentation concerning her ongoing medical treatment on February 25 and 27, 2020. The submission was found by the Commission to be untimely and substantively deficient.

Given Judge Nickerson's failure to comply with conditions of the CDA, the Commission revoked it on April 30, 2020. Four days later, Judge Nickerson provided additional medical documentation purportedly remedying deficiencies in the initial February submission. At no time did Judge Nickerson provide the required documentation evidencing her attendance at the required ethics course, nor did she provide any explanation for her failure to comply.

Based upon our review of the record, we agree with the Commission's findings that Judge Nickerson failed to comply with the CDA by failing to: (1) verify that she completed the terms of her probation within the original and extended deadlines; (2) submit timely and complete documentation establishing compliance with the recommendations for treatment and management of her medical condition; and (3) submit any documentation showing that she completed an ethics course.

### C. Findings of Fact Related to the Tax Lien and Judgment

In February 2019, Investigative Counsel initiated an investigation into an outstanding tax judgment and lien for 2013 taxes that had been entered against Judge Nickerson in favor of the Maryland Comptroller. After Investigative Counsel's efforts to obtain Judge Nickerson's assistance in acquiring certain tax documents from the Maryland Comptroller were unfruitful, Investigative Counsel successfully obtained these documents pursuant to a subpoena.[11]

Following the investigation, the Commission and Judge Nickerson agreed that a reprimand was appropriate. Accordingly, on November 13, 2019, the Commission issued a reprimand for conduct related to the tax lien and judgment entered against Judge Nickerson. Pursuant to the terms of the reprimand, Judge Nickerson agreed to provide the Commission with documentation confirming that she had filed income tax returns for the years 2013 through 2018 and that she satisfied and paid in full all tax obligations owed to either the Internal Revenue Service or Maryland Comptroller's Office. The reprimand specified that this paperwork was due to Investigative Counsel on or before May 13, 2020.

Judge Nickerson did not provide the requested documents by the agreed-upon deadline. Notwithstanding Judge Nickerson's failure to meet the May 13 deadline, by letter dated July 1, 2020, the Commission opted to extend the deadline to July 8. Once again, Judge Nickerson failed to meet the extended deadline. With no documentation forthcoming, in August 2020, the Commission directed Investigative Counsel to file

---

[11] The Commission's authority to issue subpoenas is set forth in Maryland Code, Courts and Judicial Proceedings Article § 13-402.

charges against Judge Nickerson. At the December 8 hearing, Judge Nickerson told the Commission she did not submit the requested tax documentation because the Commission had previously determined that her documents submitted in connection with the 2018 Charges were incomplete, and that after the Commission determined to proceed on the 2018 Charges, it was her belief that she "couldn't submit anything else."

The Commission found that Judge Nickerson failed to cooperate with Investigative Counsel's initial investigation when she did not assist Investigative Counsel in procuring certain tax documents from the Maryland Comptroller. The Commission noted that, although Investigative Counsel ultimately procured those documents, they were only obtained after the Commission issued a subpoena for their production. Our independent review of the record confirms these facts.

The Commission also found that Judge Nickerson failed to comply with the terms of the reprimand when she failed to provide the required documentation concerning her tax filings and payments. Importantly, the Commission determined that Judge Nickerson's explanation for her failure to timely submit documentation evidencing compliance with the tax laws was not credible. The Commission determined that, even if there was any doubt that the 2018 Charges (which were reinstituted on April 30, 2020 after the CDA was revoked and amended on June 8, 2020) somehow altered the terms of the reprimand, such uncertainty was remedied when the Commission, by letter dated July 1, 2020, asked Judge Nickerson to provide documentation concerning tax filings and payments on or before July 8, 2020. In other words, the Commission concluded Judge Nickerson had no reason to believe that she "couldn't submit anything else[]" after Investigative Counsel filed the 2018

17

Charges, as the Commission sent a letter several months after the charges were filed expressly requesting documentation concerning her tax filings and payments. Based upon our review of the record, the Commission's findings of fact on this issue are not clearly erroneous.

## III

## The Commission's Conclusions of Law

The Commission found, with respect to the 2018 Charges, that Judge Nickerson's conduct resulted in violations of Maryland Rules 18-101.1, 18-101.2, 18-101.3, 18-103.1, and 18-102.16(a). As for the 2019 Charge, the Commission found Judge Nickerson violated Maryland Rule 18-102.16(a). In light of these violations, the Commission concluded Judge Nickerson engaged in sanctionable conduct as defined by Maryland Rule 18-402(m)(1).

When reviewing the Commission's legal conclusions, we independently review the record to determine whether the Commission's decision is supported by clear and convincing evidence. *Russell*, 464 Md. at 412–13 ("Upon our independent review, this Court must determine whether the charges against the respondent are supported by clear and convincing evidence and which, if any, Rules have been violated.") (cleaned up); *In re Lamdin*, 404 Md. 631, 637 (2008); *In re Diener and Broccolino*, 268 Md. 659, 670 (1973). Having independently evaluated the record, we conclude that the Commission's legal conclusions are supported by clear and convincing evidence.

## A. MCJC Rules Governing Judicial Integrity and the Avoidance of Impropriety in Settings Outside the Performance of Judicial Duties

There are many ethical canons embodied in the MCJC that govern a judge's conduct during the performance of his or her judicial duties. Standing on equal footing with these performance-related rules are the rules that generally speak to judicial integrity and the avoidance of impropriety or the appearance thereof, irrespective of whether the conduct arises during the performance of judicial duties.[12] These rules are intended to promote public confidence in the judicial system at all levels and in all courts.

We start with the general rule that a judge's conduct must promote confidence in the judiciary at all times, and not simply during the performance of his or her official duties. *See* Md. Rule 18-101.2 (directing judges to "act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary[]" and to "avoid conduct that would create in reasonable minds a perception of impropriety[]"). This general rule overlaps with more specific ones.

Maryland Rule 18-101.3 prohibits judges from "lend[ing] the prestige of judicial office to advance the personal or economic interests of the judge or others[.]" The comments to the rule provide specific examples of prohibited conduct. Comment 1 to Maryland Rule 18-101.3 provides that "[i]t is improper for a judge to use or attempt to use his or her position to gain . . . deferential treatment of any kind. For example, it would be

---

[12] The Preamble to the MCJC also embodies this notion, stating that: "Judges should maintain the dignity of judicial office at all times, and avoid both impropriety and the appearance of impropriety in their professional and personal lives." Md. Rule 18-100.4(b).

19

improper for a judge to allude to his or her judicial status to gain favorable treatment in encounters with traffic officials."

In a similar vein, Maryland Rule 18-103.1 provides that when a judge is engaged in extrajudicial activities, "a judge shall not: . . . participate in activities that would appear to a reasonable person to undermine the judge's independence, integrity, or impartiality; [or] engage in conduct that would appear to a reasonable person to be coercive[.]" Md. Rule 18-103.1(c), (d).

And of course, it should come as no surprise that those who apply and enforce the law are expected to abide by it. Maryland Rule 18-101.1 codifies this commonsense principle of judicial conduct by providing "judge[s] shall comply with the law, including [the MCJC]." Indeed, one of the basic tenets undergirding our justice system is that no man or woman is above the law, irrespective of title or position.

We agree with the Commission's conclusion that Judge Nickerson's conduct during the March 2018 traffic stop violated these rules. Of course, the underlying conduct that gave rise to the stop in the first instance (consisting of the impaired driving and four related charges for which she was found guilty) constituted a violation of Maryland Rules 18-101.1 and 18-101.2. We also agree with the Commission's conclusion that Judge Nickerson's interactions with Sergeant Kettner and conduct during the traffic stop violated Maryland Rules 18-101.2, 18-101.3, and 18-103.1. As noted above, Judge Nickerson mentioned her status as an orphans' court judge, not once, but a total of three times during the traffic stop in a not-so-subtle attempt to gain favorable treatment. Not only did Judge Nickerson invoke her status as an orphans' court judge, she repeatedly mentioned her

20

upcoming election and the dire professional consequences that would befall her if Sergeant Kettner did not give her preferential treatment. It is clear from our review of the record that Judge Nickerson was attempting to use the prestige of judicial office for personal gain and to advance her personal interests. In doing so, Judge Nickerson did precisely what the Rules proscribe. *See* Md. Rule 18-101.3, cmt. 1 ("For example, it would be improper for a judge to allude to his or her judicial status to gain favorable treatment in encounters with traffic officials."). Moreover, we agree with the Commission's conclusion that Judge Nickerson's conduct in mentioning her judicial position, combined with her references to Sergeant Kettner's superior officer, Lieutenant Kirby, constituted conduct that would appear to a reasonable person to be coercive. *See* Md. Rule 18-103.1(d). It is clear from the moment the stop commenced, continuing up through and after Judge Nickerson's arrest, that she continued to use her judicial position and relationship with Sergeant Kettner's superior to place pressure on Sergeant Kettner to gain preferential treatment. This conduct is in clear violation of Maryland Rules 18-101.2, 18-101.3, and 18-103.1.

We also agree with the Commission's conclusion that Judge Nickerson's lack of cooperation with Sergeant Kettner throughout the stop violated Maryland Rule 18-101.2. The totality of Judge Nickerson's actions during the entirety of the stop—her comments about her judicial position and invoking Sergeant Kettner's superior officer, her dishonest and evolving answers concerning the amount of alcohol she had consumed and the contents of the clear liquid in the cup in the car, as well as her refusal to answer the officer's direct question (which he asked thirteen times) concerning her willingness to take a blood alcohol concentration test—are all actions that erode public confidence in the judiciary, and would

21

cause a reasonable person to question the judge's ability to carry out her judicial responsibilities with impartiality and integrity.

### B. MCJC Rules Requiring Cooperation with Judicial Disciplinary Agencies

Judges are required to "cooperate and be candid and honest with judicial . . . disciplinary agencies[,]" as "[c]ooperation with investigations and proceedings of judicial . . . discipline agencies . . . instills confidence in judges' commitment to the integrity of the judicial system and the protection of the public." Md. Rule 18-102.16(a), cmt. 1.

The Commission found that Judge Nickerson violated Maryland Rule 18-102.16(a) in connection with both the 2018 Charges and the 2019 Charge. With respect to the 2018 Charges, the Commission concluded Judge Nickerson violated Maryland Rule 18-102.16(a) by failing to timely meet the conditions of the CDA, providing partial and untimely information to the Commission, failing to seek deadline extensions, and failing to properly communicate and cooperate with the Commission and Investigative Counsel. As for the 2019 Charge, the Commission concluded Judge Nickerson violated Maryland Rule 18-102.16(a) when she failed to timely provide the Commission with the required documentation to confirm her 2013 through 2018 tax filings and payments, consistent with the terms of the private reprimand.

Based upon our independent review of the record, we agree with these findings. Judge Nickerson failed to provide any of the information required by agreed-upon terms of the CDA and the reprimand in a timely fashion. The untimely documentation that she ultimately submitted to Investigative Counsel concerning her medical condition was not

complete. Additionally, the record reflects that Judge Nickerson never submitted documentation evidencing her completion of the required ethics course.

With respect to the 2019 Charge, Judge Nickerson failed to cooperate with Investigative Counsel in its investigation into the outstanding tax lien. After requesting Judge Nickerson's assistance, which was not forthcoming, the Commission was required to issue a subpoena in order to obtain the necessary documentation. After the investigation had concluded and the reprimand was issued by agreement, she failed to submit the required documentation confirming her tax filings and payment.

These inactions constituted a violation of Maryland Rule 18-102.16(a). This particular rule violation is troubling from a 10,000-foot vantage point, as well as from the perspective of the individual judge that is the subject of disciplinary proceedings. On a larger scale, these failures evidence a disregard for the Commission, the judiciary, and the public. The judicial disciplinary system established by the Maryland Constitution and Maryland Rules does not work if judges fail to cooperate with disciplinary investigations or comply with the terms and conditions established by the Commission in connection with the disposition of the investigation. Condoning such failures would undoubtedly cause an erosion of the public's confidence in the judiciary as a whole.

Orphans' court judges are required to ensure that parties who appear before them adhere to deadlines, often following the loss of a loved one, and sometimes in the midst of complicated family disputes. Failure to meet deadlines established by the Estates and Trusts Article of the Maryland Code, which is administered by the judges of the orphans' courts, can have significant negative consequences. We agree with the Commission's

conclusion that Judge Nickerson's failure to comply with the deadlines and conditions established by the Commission, including the extensions provided, set a poor example for the parties appearing before her.

On an individual level, this rule violation is troubling because it highlights the fact that this formal disciplinary proceeding could have been avoided entirely if Judge Nickerson had simply complied with the initial agreed-upon conditions of the CDA and reprimand. At the conclusion of both investigations, the Commission agreed to a disposition that did not involve proceeding with formal charges. In other words, through the initial disposition of these investigations, Judge Nickerson was given a second chance. Had Judge Nickerson simply complied with the conditions of the CDA and the reprimand, this matter would not have proceeded with an evidentiary hearing before the Commission, nor a formal proceeding before this Court, including the issuance of this opinion and the attendant sanction. It goes without saying that a judge's cooperation with an investigation, and compliance with the terms of the ultimate disposition, are paramount to the success of any individual judge, as well as to the integrity of the judiciary as a whole.

In light of the foregoing, we agree with the Commission's conclusion that Judge Nickerson engaged in multiple violations of the MCJC, which we determine is conduct prejudicial to the proper administration of justice, thereby constituting sanctionable conduct as defined by Maryland Rule 18-402(m)(1).

# IV

## Sanction

The Maryland Constitution provides that following "any recommendation of the Commission," this Court may, "upon a finding of misconduct while in office, or of persistent failure to perform the duties of the office, or of conduct prejudicial to the proper administration of justice, . . . remove [a] judge from office or may censure or otherwise discipline [a] judge[.]" Md. Const. art. IV, § 4B. In the present proceeding, the Commission issued an opinion recommending that Judge Nickerson be removed from office. While it is accurate that this recommendation "is entitled to great weight," the Maryland Constitution vests this Court with the ultimate authority to impose sanctions on judicial officers. *Lamdin*, 404 Md. at 652. As a result, "it is incumbent upon this Court to make an independent assessment of the appropriate sanction." *Id.*

In fashioning an appropriate sanction, this Court is guided by its duty to dispense discipline "in a manner that preserves the integrity and independence of the [j]udiciary and reaffirms, maintains[,] and restores public confidence in the administration of justice." *Id.* at 653. In imposing judicial discipline, it is not this Court's aim to punish. *Id.*; *see also In re Turney*, 311 Md. 246, 257 (1987) (observing that "[t]he objective[] of [judicial disciplinary] proceedings, and of any sanction we may impose, are the maintenance of the honor and dignity of the judiciary and the proper administration of justice rather than the punishment of the individual[]"). To the contrary, the goal of any disciplinary sanction is "to discourage others from engaging in similar conduct and to assure the public that the [j]udiciary will not condone judicial misconduct." *Lamdin*, 404 Md. at 652–53. "The

25

sanction must inform the public that we recognize that there has been judicial misconduct, must be sufficient to deter the offending judge from repeating the conduct in the future, and must be sufficient to deter others from engaging in similar conduct." *Id.* at 653.

After a careful, independent review of the entire record, we concluded that the sanction recommended by the Commission was appropriate. We are mindful that removing a judge from office is an extraordinary sanction. Indeed, we have noted that removal is generally reserved for circumstances where there is no alternative to entering an order of removal. *Diener and Broccolino*, 268 Md. at 671. It is for this reason that we have only removed three judges from office in the history of this Court. *See id.*; *see also In re Bennett*, 301 Md. 517 (1984). We have previously stated that:

> Precisely what 'conduct prejudicial to the proper administration of justice' is or may be, in any or all circumstances, we shall not undertake to say. Indeed, a comprehensive, universally applicable definition may never evolve[,] but it is unlikely we shall ever have much trouble recognizing and identifying such conduct whenever the constituent facts are presented.

*Diener and Broccolino*, 268 Md. at 671.

In this case, our decision to accept the Commission's unanimous recommendation was based upon the totality of the circumstances comprising the multiple violations of the MCJC spanning two separate investigations. Judge Nickerson's dishonesty and lack of candor with Sergeant Kettner, combined with her attempts to use her position to obtain favorable treatment during a traffic stop, undermine public confidence in our judicial system, and clearly constituted conduct prejudicial to the proper administration of justice. However, our decision to remove Judge Nickerson from office was not simply a consequence of her traffic violations or the tax lien and judgment entered against her. As

26

the Commission originally determined, such matters could have been, and were in fact, informally addressed by the entry of a CDA and reprimand. Significantly, Judge Nickerson failed to comply with the conditions of the informal dispositions. Through her inactions, she demonstrated a lack of appreciation for the seriousness of her misconduct and the gravity of the Commission proceedings. Judge Nickerson's inability to comply with conditions, such as confirming attendance at an ethics course and confirming the filing of tax returns and payment of any tax obligations, demonstrate an inability or unwillingness to undertake rather basic and reasonable requirements imposed by the Commission to ensure that she complies with the laws and ethical requirements necessary for the position. For these reasons, we determined that her removal from office was the only outcome that would preserve the integrity of the judiciary, discourage others from engaging in similar conduct, and assure the public that the judiciary will not condone judicial misconduct. Accordingly, we issued an order on March 26, 2021 removing Judge Nickerson from office.